WESTON-DODSON COMPANY et al. *v.*
DANIEL M. CARL.
[No. 76, October Term, 1928.]

*Decided February 13th, 1929.*

536

The cause was argued before BOND, C. J., ADKINS, OF-FUTT, DIGGES, and PARKE, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom was *Edward H. Burke* on the brief, for the appellants.

*Joseph Townsend England,* with whom was *John D. C. Duncan* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The controversy here is upon a question whether an injury sustained by a salesman and sales manager of the appellant, the Weston-Dodson Company, Inc., arose out of and in the course of his employment, so that he is entitled to compensation under the Workmen's Compensation Act, Code, art. 101, secs. 14 and 32. Whether the employer and the employment in the particular case come within the terms of the sub-section of section 32, concerning compensation to salesmen and sales managers, has not been argued or questioned and is not, therefore, considered. The State Industrial Accident Commission awarded the claimant compensation, and on appeal the trial judge granted instructions to the jury permitting an affirmance of the award, and denied contrary instructions prayed by the employer and the insurer. Exceptions were taken to the action on the prayers and also to the rejection of issues of facts proposed by the employer and insurer.

The Weston-Dodson Company is a Pennsylvania corporation which mines and ships coal, and the claimant, Carl, was employed as the salesman and sales manager for Maryland

and nearby territory, his duties requiring him to travel about in this state, Virginia and the District of Columbia. He had a room in his own home in Catonsville, Maryland, near Baltimore, fitted up as an office for himself and for his daughter, who acted as his secretary, and had the telephone there listed in the telephone directory under the name of the Weston-Dodson Company. The company paid salaries to both himself and his daughter. It did not pay for the office. It was Carl's practice to call on every customer in the territory once or twice a month to make sales, and also concerning credit to be extended. And a credit manager of his employer's usually came from Pennsylvania and accompanied him, traveling about in his territory, once a month.

The accident and injury for which Carl makes claim occurred one night when the credit manager had come to Baltimore to accompany Carl next day, and had, as was his custom, gone out to Carl's house to talk over plans for their trip next morning. During the evening the two discussed accounts overdue at several places, especially one at Bethesda, Maryland. At a late hour the credit manager started to return to his hotel in Baltimore, and he and Carl left the house and walked to an electric car line about three-quarters of a block away. They were still discussing plans for their trip next day and the accounts to be dealt with. They stopped on a low platform by the roadside made for car passengers, and when the car came the two men bade each other good night and the credit manager stepped up to board the car, while Carl turned and took a step to start back to his house. And at just that point he was struck by the backing automobile of a stranger, and injured.

This court has never before had to decide whether an injury in a highway accident arose out of the injured's employment, but cases in other jurisdictions present a good deal of discussion on the problem of the application of a like statutory provision to such injuries. The words "arising out of and in the course of the employment" are broad. An explanation of their meaning and effect, generally accepted in other American jurisdictions, is that of Chief Justice Rugg in

538

*McNicol's Case,* 215 Mass. 497, which refers to the decisions under the English statute, from which the American provision was taken. "It is sufficient," said Chief Justice Rugg, "to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but, after the event, it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

But the courts which have adopted this explanation have differed in its applications to street accidents. See review of decisions in note 51 *A. L. R.* 509. There seems to be an agreement now of the majority of courts which have had to consider the problem, that injuries sustained by salesmen on highways, while actually engaged in the work of selling, or traveling about among customers, are to be regarded as having arisen out of as well as in the course of the employment, within the meaning of the statute, even though the injuries were such as all persons on the highways, irrespective of their employment, were equally exposed to. Cases reviewed in a note, 29 *A. L. R.* 120; *Kunze v. Detroit Shade*

*Tree Co.,* 192 Mich. 435; *Stockley v. School District,* 231 Mich. 523. In the case last cited the injury held compensable was sustained by a school teacher on her way to an evening meeting which she was required to attend. On the other hand, an injury to a traveling salesman while returning to his home from visits to customers was held not compensable under the act. *Sichlerman v. Kent Store Co.,* 217 Mich. 364. And an injury to one who gathered samples of raw material for his employer, and who, being too late to return with them to the factory, was, according to his custom in such cases, taking them to his home to keep them overnight, was held not within the statute. *N. K. Fairbank Co. v. Industrial Comm.,* 285 Ill. 11.

This court agrees in the construction that the statute imposes the double requirement, and that a distinction is to be observed between injuries which do and injuries which do not arise out of the employment, even when all alike arise in the course of it. From that point the question is one of fact, to be decided independently in each particular case. And, given an undisputed state of facts, the court has to determine whether the injury does or does not come within those which the statute means to include. The employment of salesmen and sales managers having now been included by statute within those for which compensation has been provided by the act, injuries from hazards which it brings upon such employees are compensable. And we agree that the dangers of traffic accidents to salesmen or sales managers in the performance of duties on the streets constitute hazards of the employment, injuries from which are compensable. Whether in this case the employee was in the performance of duties of his employment on the street is a close question, and the testimony seems to us to leave some uncertainty on the facts necessary for the decision of it. The court has concluded that if it was a part of Carl's work as salesman to meet the credit manager and transact the employer's business with him before taking one of their trips, and if, when they walked to the credit manager's car, they had not yet finished that work, and it was the duty of Carl

to go along and finish it—as distinguished from voluntarily accompanying the visitor· and talking business — then he would be acting in the course of his employment within the meaning of the law. But it is on this distinction that the evidence leaves some uncertainty. And as the commission awarded compensation, and the burden of establishing error in its findings was by this fact cast upon the employer and insurer on their appeal. under section 56 of the act, insufficiency of any sort in the proof must work against them. It must, this court thinks, prevent an instruction that on the evidence the injury did not arise in the course of the employment here. The fact that Carl was, when struck, on the point of leaving the place where the car was boarded, seems to us to afford no sufficient ground for the instruction, for he was at the spot and in the position where his duty took him, if it was his duty, and had not had time to leave it.

Whether the injury arose out of the employment, too, seems to be in this particular case the same question, once it is settled that ordinary street traffic accidents constitute hazards of an employment which takes the employee on the street, for this seems to have been an ordinary traffic accident. If it be found as a fact that he was then acting in the course of his employment, at the place on the street where that employment took him, and the view is taken that ordinary traffic accidents constitute the hazards of a salesman's employment while he is in the course of it, the question whether the injury in this case arose out of the employment is answered. The conclusion of the court is that for this reason the court could not direct a finding that the injury did not arise out of the employment.

The ground of exception to the court's action in settling the issues of fact to be submitted to the jury is closely allied to that already considered. The claimant offered, and the court granted, an issue combining in one the questions whether the injury arose out of the employment and in the course of it. "Is the disability the result of an accidental personal injury arising out of and in the course of his employment." And the employer and insurer offered two

forms, to submit separately each of the questions whether the injury arose out of the employment and whether it arose in the course of it. The advantage to the employer and insurer in having the separate issues submitted would, of course, be only an advantage of emphasis on the distinction between the two. And while it may be clearer to make two issues when there are separate questions in a particular case, still we do not deem it necessary. With proper instructions the single, combined issue would seem to present the question sufficiently. We do not find any reversible error in the ruling in this respect.

*Judgment affirmed, with costs to the appellee.*

---

On a motion for reargument or reconsideration, it is pointed out that the conclusions reached by the court on the principles governing the case are not applied to the action of the trial court in rejecting three of the defendant's prayers for instructions, in case it should be found that there was any question open for the jury's consideration. In the proposed instructions the jury would be directed to find for the employer and insurer if it should be found that Carl's injury came from a danger which was not peculiar to his work, but common to all persons who might have occasion to use the roads, apart from such employment as Carl's. It was the conclusion of the court that by the passage of the statute extending the provisions of the Workmen's Compensation Act to salesmen the Legislature necessarily included, within the risks covered, dangers of traffic accidents which might equally be incurred by others on the roads, without relation to their employment, and that if Carl was found by the jury to be acting in the course of his employment at the time of the accident, then, as it was an ordinary street accident, the injury from it would be compensable. It would not be consistent with the view expressed in the opinion, therefore, that the instructions prayed should be granted, and they were, in the opinion of the court, properly refused.