EMPLOYERS' LIABILITY ASSUR. CORPORATION *et al. v.*
WARREN.

*(Nashville,* December Term, 1937.)

Opinion filed Feb. 12, 1938.

404

CORNELIUS, McKINNEY & GILBERT, of Nashville, for plaintiffs in error.

GOODPASTURE & CARPENTER, of Nashville, for defendant in error.

· MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The company appeals from an award of compensation to Mrs. Warren and two grandchildren, following the accidental death of her husband, Fred H. Warren, a regular employee of Snyder Bros., Incorporated, of Louisville, Ky. The accident occurred at Lafayette, Tenn., May 12, 1936. Warren was at the time, and had been

for three years, employed by Snyder Bros. under a contract entered into in Kentucky, as a special agent and adjuster in the fire insurance business of Snyder Bros., his territory being the State of Tennessee. His duties required him to appoint agents, adjust accounts, make collections, inspect buildings, and adjust losses. He had headquarters in Nashville, but traveled from place to place over the State continuously, as instructed by his employers, following a prearranged itinerary and reporting daily. Among his other duties he was required to inspect insured buildings and report thereon his comments and recommendations on forms or slips provided.

On the day of the accident he had gone to Lafayette to make such inspections. Arriving about noon, he contacted a local agent, George W. Johnson, and with him inspected some thirty-five or forty houses. He returned to his hotel some time after 7 o'clock. There is evidence that he contemplated filling out that evening his report slips, and Mr. Johnson was to join him at his room and assist him in this work, but an electrical storm prevented Mr. Johnson from coming. Meanwhile, Warren seated himself for awhile on a long second-story porch of the hotel on which his bedroom opened. He seems to have been waiting for the return of Mr. Johnson and for the bedroom, which was hot and uncomfortable, to cool off. He had been reading a magazine and, rising to enter his room, he says to pursue the work mentioned, in some way he stumbled and fell over the banister of the porch at the end near which he had been sitting. He was badly injured and, after lingering in a totally disabled condition until the following February, died as the result of this injury.

No issue is raised as to his being an employee of Snyder Bros., or as to the dependency of the petitioners, or as to his having died from this accidental injury.

Summarizing the motion for a new trial, the questions raised therein, to which appellant is restricted here, are: (1) That there is no evidence that the accident and death of Warren arose out of and in the course of his employment; (2) that "the petitioner did not carry the burden of proving that Fred H. Warren had elected to operate under the provision of either the Kentucky or Tennessee Workmen's Compensation law," Ky. St. 1936, section 4880, et seq., as amended; Code Tenn., 1932, section 6851, et seq., as amended; and (3) that the award was erroneous in amount according to the terms of the Kentucky statute.

The order of the trial judge, Hon. A. B. Neil, after formal recitals and stating the pleadings, proceeds as follows:

"The Court further finds from the evidence that while Fred H. Warren was employed to perform services for his employer, Snyder Brothers General Agency, in the State of Tennessee, that the contract of employment was consummated in Louisville, Kentucky, and, therefore, in determining the rights between the parties the Court applies the Workmen's Compensation Law of Kentucky as compiled in the official Code of Kentucky.

"That Fred H. Warren had complied with Section 4957 of the Code of Kentucky and that he and Snyder Brothers General Agency had elected under the Kentucky Workmen's Compensation Law to operate and was so operating on May 12, 1936 and prior thereto.

"That on May 12, 1936, at Lafayette, Tennessee, Fred H. Warren sustained an accident which arose out of and

in the course of his employment with defendant Snyder Brothers General Agency and as a proximate result of such accident received injuries which permanently disabled him and from which he subsequently died. That Fred H. Warren's average weekly wage amounted to $62.50.

"That Fred H. Warren left surviving him his widow, the petitioner, Mrs. Amelia B. Warren, and two minor grandchildren, Pat and Fred O'Leary, who were wholly dependent upon him for support.

"It is, therefore, ordered, adjudged and decreed that the petitioner, Mrs. Amelia B. Warren, Administratrix, have and recover of defendants the sum of $15.00 per week from May 12, 1936, to February 13, 1937, the same being 39½ weeks, or a total of $592.50.

"It is further ordered, adjudged and decreed by the Court that the petitioner, Mrs. Amelia B. Warren, have and recover of defendants for the benefit of herself and Pat and Fred O'Leary, $12.00 per week, such payments to be made for the period between February 13, 1937, the date of Fred H. Warren's death, and 295½ weeks after said date of February 13, 1937, or until the intervening termination of dependency, but in no event to exceed the maximum amount of Four Thousand ($4,-000.00) Dollars.

"In addition the petitioner shall have and recover of the defendants the sum of $100.00 medical and doctors' expenses and $75.00 funeral expenses, and costs of this cause for which let execution issue."

We find it unnecessary to discuss the question raised as to the accuracy of the calculation of the amount of the award, in view of the following comment thereon on

the brief of counsel for petitioner, assuming that proper correction will be made in the decree in this court:

"We readily concede under the Kentucky statute that the compensation proper, since the death of Mr. Warren, cannot exceed Four Thousand Dollars plus the allowance for medical and hospital expense totaling $175.00. If the compensation has been calculated to exceed that amount, we concede the correctness of this error. It was not so intended by counsel in drawing the order. Section 4893, subsec. 2, Carroll's Statutes of Kentucky, as amended by Acts 1936-37, 4th Ex. Sess., c. 25, section 3."

■ Considering now the question whether or not there is evidence that the parties were working as employer and employee under the Kentucky Compensation Law, we find material evidence, uncontradicted, that this was the case. R. W. Snyder, president of Snyder Bros., the employer, testified unequivocally to this effect; also, that "Mr. Warren had to sign a compensation book which is furnished by the insurance Company;" and also that the employer carried liability insurance with the appellant company, and that the pay roll on which the premiums paid for the insurance was calculated included the wages of Warren. In this situation, neither the employer nor the insurer is in position to question the relationship of the parties as under the Compensation Law.

Learned counsel for appellants refer to provisions of the Kentucky statutes for the evidencing by both employers and employees of their election to come under the Compensation Law. The apparent purpose of these provisions was to afford the parties a means of establishing this status in case of controversy. For example, Ky. St., section 4956, after prescribing a form of no-

tice to be given the board by an employer of his election to operate under the act, concludes: "And said notice . . . may be used as evidence in any action by or against said employer in any court . . . that said employer has elected to operate under this act." And Ky. St. 1936, section 4957, amended in 1937, Acts 1936-37, 4th Ex. Sess., chapter 25, section 6, after setting forth a form of election notice to be signed by the employee, concludes, "such evidence shall constitute prima facie proof that the deceased [employee] had himself duly accepted the provisions of this Act."

We think it obvious that, when the employer and employee agree on the fact that both had elected to work under the law and had been doing so for years, these statutory provisions for establishment of the fact of such relationship have no application.

The insistence made on the merits is that there is no evidence to support the finding that the accident to Warren arose out of and in the course of his employment, perhaps more specifically that it did not arise out of his employment, since there can be no question that Warren was at the time in the general course of his employment. We are of opinion that under our cases and the decisions in other jurisdictions there is material evidence that the accident arose out of and in the course of his employment.

In *Patten Hotel Co.* v. *Milner*, 145 Tenn., 632, 238 S. W., 75, 76, the pertinent rule was thus stated:

"An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all of the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

In *Central Surety & Insurance Corp.* v. *Court,* 162 Tenn., 477, 36 S. W. (2d), 907, 908, in which the employee was employed to travel over a given territory and was injured while going from her hotel to the office, it was said:

"The employment imposes the duty upon the employee to go from place to place at the will of the employer in the performance of duty, and the risks of travel are directly incident to the employment itself. In such cases resulting injuries are the proper subject for compensation. *London & L. Indemnity Co.* v. *Industrial Commission,* 35 Cal. App., 681, 170 P., 1074; *Cook's Case,* 243 Mass., 572, 137 N. E., 733, 29 A. L. R., 114, note C, page 124; *Stansberry* v. *Monitor Stove Co.,* 150 Minn., 1, 183 N. W., 977, 20 A. L. R., Annotation, page 319.

"The petitioner was acting in course of the employment. The performance of duty assigned to her made it necessary for petitioner to travel, and, while going about the employer's business, injury resulted. There was direct causal connection between the employment and the injury. *Carmichael* v. *Mahan Motor Co.,* 157 Tenn., 613, 11 S. W. (2d), 672; *Early-Stratton Co.* v. *Rollison,* 156 Tenn., 256, 300 S. W., 569; *In re Harraden,* 66 Ind. App., 298, 118 N. E., 142."

Also, the principles announced and followed in *McClain* v. *Kingsport Improvement Corporation,* 147 Tenn., 130, 245 S. W., 837, and *Shockley* v. *Produce & Ice Co.,* 158 Tenn., 148, 11 S. W. (2d), 900, are applicable here.

The following holdings in other jurisdictions are cited by counsel for petitioner as particularly applicable to the facts of this case, where the employee's general employment required him to travel from place to place and

to stop at hotels, furnishing his employer an itinerary of his route, and making reports: *Stansberry* v. *Monitor Stove Co.*, 150 Minn., 1, 183 N. W., 977, 20 A. L. R., 316; *Harivel* v. *Hall-Thompson Co.*, 98 Conn., 753, 120 A., 603, 605; *Beem* v. *Lee Mercantile Co.*, 337 Mo., 114, 85 S. W. (2d), 441, 100 A. L. R., 1044.

In *Harivel* v. *Hall-Thompson Co.*, *supra*, awarding compensation to a traveling salesman on a designated route who lost his life in a fire, while attempting to escape from the hotel in which he was stopping for the night, the Supreme Court of Connecticut quoted and approved the following from the opinion of the Supreme Court of Minnesota, in *Stansberry* v. *Monitor Stove Co.*, *supra*:

"The important facts are that he was a traveling salesman engaged in the service of his employer. As such he was obliged to stop at hotels in the course of his travel and to furnish the Minneapolis office with a list of the cities on his itinerary and the names of the hotels at which he was to stop and how long he was to be at each hotel, and it was his duty to carry out such schedule. He had given Grand Forks as one of such cities and the Frederic Hotel as his stopping place there. The question is whether such an injury received while stopping there arose out of and in the course of his employment. We think it did."

If the term "inspector" be substituted for "salesman" in the paragraph just quoted, we would have an exact statement of the conditions of the instant case.

██ ██ Counsel for the company seek to distinguish this case from those above cited in which compensation was awarded on the theory that under the proof Warren had when injured ceased from and departed from his

work for his employer and was engaged in resting and entertaining himself in his personal behalf. They rely upon testimony that he came to the hotel after his day's work of inspection was ended, and that when he lost his balance and fell he had just risen, or was in the act of rising, from a seat on the porch where he had been engaged for some time in reading a magazine; that there was thus a break in the continuity of his service to his employer, during which he was without compensation coverage. In this view we are unable to concur. It overlooks the fact that it was necessarily within the contemplation of the parties, his employer and himself, that there would be periods of rest and times for food and sleep, from day to day, as essential incidents of his occupation. If, for example, he had, while en route to Lafayette from his headquarters in Nashville, alighted from his car to get a drink of water from a well or spring and stumbled over some obstruction and fallen and suffered injury, it would not be contended that he could not recover. Or, bringing the case more nearly within the facts, if while moving about his room in the hotel from one table on which he was writing his reports to his employer to another table to continue this work, he had fallen over a chair and been injured, certainly it would be too plain for debate that he was within the contemplation of the Compensation Act. The suggested distinction is without a substantial difference. The testimony is that it was his regular custom to complete his day's work of inspection after his return in the evening to his lodging, wherever that happened to be, by filling out for mailing to his employer the forms or slips on which he was required to make his daily reports. This was an essential part of his regular occupation, ha-

bitually performed. The testimony is that the intermission which he occupied in resting and reading was occasioned by weather conditions and the failure of Mr. Johnson to return to the hotel as arranged. It cannot be said that he was beyond the scope of his employment for this waiting period thus incidentally occasioned. It will be recalled that his testimony was that when he fell he was in the act of returning to his room for the very purpose of completing his day's work of filling out these reports. He must be held to be as much within the coverage of the Compensation Act as if he had picked up his pencil and pads, or was immediately using them. This is not a case of an employee whose duties are in a factory or store, or other place apart from his home, and who, after his day's work is ended and after his return to his home, while occupied with his home duties or pleasures, suffers an accident. Warren was away from his home on a mission wholly in behalf of and under the direction of his employer, and the risks incident to his journey, including natural and usual suspension of actual work, were within the protection of the Compensation Act. This case is thus distinguished from the recent case of *Jellico Grocery Co.* v. *Hendrickson,* 172 Tenn., 149, 110 S. W. (2d), 333, 336, wherein the accident occurred in the home of the employee. The opinion in that case stressed that when injured the petitioner was not at ''a place that defendant required petitioner to go;'' that, ''His going home was not in the course of his employment by defendant, but was in the course of his obligation and duty to return to his home and family for the night.'' Here: ''The injury having occurred within the period of employment at a place where he reasonably might be while reasonably fulfilling his

duties," to quote apt language from a head note in *Harivel* v. *Hall-Thompson Co., supra.* The yardstick of the contractual service of the employee measures alike the contractual obligation of the employer for compensation. We have used above the phrase "risks incident to his journey" advisedly—recognizing, consistently with the limitation thus implied, that one thus generally employed may so conduct or occupy himself as to preclude recovery. To illustrate, if he should participate in a prize fight, or provoke and involve himself in a personal difficulty, or take time off for a shooting or fishing excursion, or to attend a ball game or picture show, and suffer personal injuries incident to or attributable, in whole or in part, to such voluntary departure from the service of his employer, the continuity of his employment would have been broken, and he could not recover compensation for such injuries. He could not claim compensation. Having departed from his employment, his accident could not be said to have arisen out of or in the course of his employment.

Two other matters should be mentioned: (1) Counsel for the company challenge the jurisdiction of the Tennessee Court to adjudge liability in this case for compensation under the Kentucky act. Suffice it to say that this question is first made in this court and comes too late. Jurisdiction over the subject-matter of compensation awards generally being in the circuit (among other) courts of this state, if defendants desired to make the question of procedure,—that the Kentucky Compensation Board had exclusive power to make an award under the Kentucky statute,—the question must have been made below. See *Campbell* v. *Illinois R. R. Co.*, 84 Tenn. (16 Lea), 270; Code, Section 8718;

416

*Morgan Bros.* v. *Coal & Iron Co.,* 134 Tenn., 228, 238, 183 S. W., 1019, Ann. Cas., 1917E, 42. In the last-cited case the objection was, as here, that exclusive jurisdiction was in another court, that of bankruptcy (here in the Kentucky Compensation Board), and the court held that, no objection having been made in the lower court (which had jurisdiction over the subject matter generally), it came too late, when made for the first time on appeal.

█ Moreover, if we were called upon to pass on the question of jurisdiction here raised, the following excerpt from the opinion in *Douthwright* v. *Champlin,* 91 Conn., 524, at page 527, 100 A., 97, Ann. Cas., 1917E, 512, would be in point: "The practical difficulties of enforcing the foreign contract, at least where the act is contractual, will not be as a rule insuperable if it is kept in mind that the right of compensation given by the act and the venue are totally different concepts. The act cannot create, and at the same time destroy, the right to sue upon a transitory action. The only actions to secure compensation under a foreign statute which we cannot enforce are those 'where right and remedy are so united that the right cannot be enforced except in the manner and before the tribunal designated by the act.' *Tennessee Coal, I. & R. Co.* v. *George,* 233 U. S., 354, 359, 34 S. Ct., 587, 58 L. Ed., 997, L. R. A., 1916D, 685."

█ (2) Petitioner appealed and raises the question that the award should have been made under the Tennessee act. However, counsel say: "To be perfectly frank with the Court, we feel that the trial Court, under the authorities, could apply the Act of either State in making the award in this case." In view of this concession, and being in accord with the view expressed, this assignment of petitioner is overruled. And, in this

connection, it may be added that, the award having been made in enforcement of the rights of .petitioner under the Kentucky Compensation Act, the Tennessee courts have properly recognized the *lex loci contractus* rule (*Smith* v. *Van Noy Interstate Co.*, 150 Tenn., 25, 262 S. W., 1048, 35 A. L. R., 1409), and we are cited to no decisions of the Kentucky courts in conflict with the conclusions herein announced as to liability.

It results that the judgment is affirmed, subject to the agreed corrections in amount to be made in the decree.