756 A.2d 575

**Patricia MULREADY**

v.

**UNIVERSITY RESEARCH CORPORATION et al.**

**No. 133, Sept. Term, 1999.**

Court of Appeals of Maryland.

July 26, 2000.

52

John Noble (Alexander J. Crow of Noble and Crow, P.A., on brief), Rockville, for Petitioner.

John T. Beamer, II (Law Offices of Timothy P. McGough, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

While attending a seminar in Canada on behalf of her employer, the petitioner, Patricia Mulready (Mulready), was injured when she slipped in her hotel bathtub. This case presents the issue of whether her injury is compensable under the Workers' Compensation Act (the Act), Maryland Code (1991, 1999 Repl.Vol.), Title 9 of the Labor and Employment Article.[1] We shall hold that the injury is compensable, as explained below.

The Workers' Compensation Commission (the Commission) determined that Mulready sustained a compensable injury. The employer, University Research Corporation, and insurer, Hartford Underwriters Insurance Company (collectively "Employer"), sought review by the Circuit Court for Montgomery County where both sides moved for summary judgment. In its cross-motion, the Employer stipulated to the facts set forth by Mulready in her motion. They are:

"On May 31, 1995, while on a seminar in Canada with the Employer, the Claimant, Patricia Mulready, slipped in a bathtub at a hotel.

"Ms. Mulready was a dissemination coordinator and worked long hours at the seminar in her position. The hotel was paid for by the Employer, selected by the Employer, and she was told to be at that particular hotel. On May 31, 1995, there was a meeting at ten o'clock a.m. to be attended

---

1. Unless otherwise noted, all statutory references are to Maryland Code (1991, 1999 Repl.Vol.), Title 9 of the Labor and Employment Article.

by many people in close quarters in a conference room. She was to take an active part in that meeting. She got up early, and was working on her preparation for the meeting.

"At about nine o'clock a.m., she went to take a shower in order to be presentable, and she slipped in the bathtub. At her home, there was a bath mat to prevent slippage, soap dish and ceramic in the wall, and a towel rack also ceramic in the wall. These are the things she could have grabbed on to. The Canadian bathtub was very slippery and did not have any of these items on the wall, nor did it have a bath mat or the sandy strips that are found in other bathtubs to prevent slippage."

The circuit court granted the Employer's motion and reversed the award.

Mulready appealed to the Court of Special Appeals which affirmed the circuit court's judgment. *Mulready v. University Research Corp.*, 128 Md.App. 392, 738 A.2d 331 (1999). Relying on *Klein v. Terra Chemicals International, Inc.*, 14 Md.App. 172, 286 A.2d 568, *cert. denied,* 265 Md. 740 (1972), described *infra,* the court held that the requisite " 'causal connection between the conditions under which the work is required to be performed and the ensuing injury' " was lacking because "there was no unusual or extraordinary condition of [Mulready's] employment that caused her to bathe or to expose herself to the hazards of bathing differently than most people concerned about their appearance and hygiene." *Mulready,* 128 Md.App. at 396, 397, 738 A.2d at 333, 334 (quoting *Klein,* 14 Md.App. at 176, 286 A.2d at 570).

This Court issued a writ of certiorari. *Mulready v. University Research Corp.*, 357 Md. 233, 743 A.2d 245 (2000). The parties agree that Mulready was acting in the course of her employment at the time of injury. The issue before us is whether the injury was one "that arises out of" her employment. § 9–101(b)(1). Thus, the employer disagrees with the rule stated in 2 A. Larson & L.K. Larson, *Larson's Workers'*

*Compensation Law* § 25.01, at 1–2 (2000) (*Larson's* ), which reads:

> "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable."

(Footnote omitted).

An early attempt in Maryland to flesh out the "arising out of" concept is found in *Weston–Dodson Co. v. Carl,* 156 Md. 535, 144 A. 708 (1929). There the claimant, a salesman, after meeting in his home with his employer's credit manager, was struck by a car in the street outside of the home while the claimant was walking with the credit manager to the latter's car. This Court held that the issue of accidental injury presented a question of fact and, accordingly, affirmed a judgment entered on a jury verdict in favor of the claimant.

The Court in *Weston–Dodson* found that courts generally had accepted the language of a Massachusetts case, reading in part:

> " '[A]n injury . . . "arises out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment.' "

*Id.* at 538, 144 A. at 709 (quoting *In re Employers' Liab. Assurance Corp.,* 215 Mass. 497, 102 N.E. 697 (1913) (*McNicol's Case* )).

*Weston–Dodson* was decided at a time when the Act specifically listed so-called extra hazardous employments, and salesmen had been added to that list. A motion for reconsideration was filed by the employer in *Weston–Dodson* pointing out that the employer had requested an instruction that the verdict must be for the employer "if it should be found that [the claimant's] injury came from a danger which was not peculiar to his work, but common to all persons who might have occasion to use the roads...." *Id.* at 541, 144 A. at 710. In response to that motion the Court said that, since the claimant was acting in the course of his employment and was injured in an ordinary street accident, the injury was compensable because the amendment adding salesmen to the Act "necessarily included, within the risks covered, dangers of traffic accidents which might equally be incurred by others on the roads, without relation to their employment." *Id.*

An "arising out of" issue was also presented in *Knoche v. Cox*, 282 Md. 447, 385 A.2d 1179 (1978), where the Court held, as a matter of law, that a dental hygienist's fatal injury arose out of her employment. She had been killed when the dentist for whom she worked accidentally fired a gun that he had been showing to a patient. The bullet passed through a wall and struck the hygienist as she was cleaning up dental powder spilled on the floor. *Id.* at 449, 385 A.2d at 1180. Surveying Maryland cases on the meaning of "arising out of," the Court explained that

" 'it is not necessary that there should exist a direct, active, or physical connection between the act causing the accident and the employment, but it is sufficient if the accident ... arises directly out of circumstances which the servant had to encounter because of his special exposure to the risks that, although external, were incidental to his employment.' "

*Id.* at 456, 385 A.2d at 1183 (quoting *Boteler v. Gardiner–Buick Co.*, 164 Md. 478, 482, 165 A. 611, 613 (1933)). Answers to the questions "[w]hy [the dentist] had the pistol in his office, why he was handling it at that particular time, the knowledge or lack of knowledge of [the hygienist] of the pistol's presence in the office, [and the dentist's] admitted

negligence in its discharge" were immaterial. *Id.* at 456–57, 385 A.2d at 1184. Instead, the relevant facts were that the hygienist "had not stepped aside from her employment; she was not guilty of any deviation from her duties; she was exposed to the injury she suffered by reason of her employment." *Id.* at 457, 385 A.2d at 1184.

Thus, *Knoche* indicates that the term "arises out of" requires, not that the performance of an employment-related task be the direct or physical cause of the injury, but, more broadly, that the injury be incidental to the employment, such that it was by reason of the employment that the employee was exposed to the risk resulting in the injury. *See also Sica v. Retail Credit Co.*, 245 Md. 606, 227 A.2d 33 (1967) (injuries sustained by diving into shallow water during an employer-sponsored outing held compensable).

As noted, the Court of Special Appeals in the instant case relied on *Klein,* 14 Md.App. 172, 286 A.2d 568, in affirming summary judgment in favor of the Employer. In this Court, the Employer likewise bottoms its argument on *Klein.* Mulready, on the other hand, looks to out-of-state cases holding that injuries suffered by employees in hotels while traveling on business are compensable.

The employee in *Klein* worked as a consultant for a chemical company. His job included attending, at the employer's expense, conferences and conventions in order to develop business. One evening during a conference Klein was dining in a public restaurant with representatives of two potential customers. Klein choked on his food, suffered cardio-respiratory arrest, and died. The workers' compensation claim came to the Court of Special Appeals on an appeal from a judgment, rendered as a matter of law by a circuit court, which reversed a Commission award. *Klein* affirmed that reversal.

The Court of Special Appeals held that the injury lacked the requisite causal connection to Klein's employment. This was because the "risk he encountered in the public restaurant of choking on a piece of meat was no greater or different in degree because of his employment than the risk experienced

by all persons engaged in the process of eating a meal, whether in a restaurant or at home," despite the fact that "his employment necessitated his eating in a public restaurant." *Id.* at 176–77, 286 A.2d at 570–71. The court rejected the argument that, because traveling "create[s] ... the necessity of eating in public restaurants," Klein's injury was compensable. *Id.* at 177, 286 A.2d at 571. The court reasoned that:

> "To accept such generalizations would be to ignore the clear and meaningful distinction between the essential factors of 'arising out of' and 'in the course of' employment, and to accord traveling employees more favorable treatment than other employees. More than that, it would do violence to the general proposition that workmen, like other members of the general public, are not insured against the common perils of life."

*Id.* at 177–78, 286 A.2d at 571.

On this basis, the *Klein* court rejected a test used in other jurisdictions and proposed by the employee according to which "an injury is compensable if it would not have happened but for the fact that the conditions or obligations of the employment placed the workman in the position where he was injured." *Id.* at 179, 286 A.2d at 572. According to the *Klein* court, this rejected test encompassed only the requirement that an injury occur in the course of employment, whereas exposure to some risk that is not "common to the public" is necessary to satisfy the requirement that the injury arise out of employment. *Id.* Finally, the court rejected the applicability of cases such as *Weston–Dodson,* 156 Md. 535, 144 A. 708, in which injuries suffered by salesmen in car accidents were held to arise out of their employment. The *Klein* court believed the rationale of such cases to be that these employees "are overexposed or exposed to a peculiar and abnormal degree to traffic hazards distinct from and beyond that to which the general public is exposed." *Klein,* 14 Md.App. at 178, 286 A.2d at 571.

Applying *Klein* to the instant case, the Court of Special Appeals likewise determined that "there was no unusual or

extraordinary condition of [Mulready's] employment that caused her to bathe or to expose herself to the hazards of bathing differently than most people concerned about their appearance and hygiene." *Mulready*, 128 Md.App. at 397, 738 A.2d at 334. The court likewise rejected out-of-state cases cited by Mulready and holding that bathtub injuries suffered by traveling employees arise out of employment, on the ground that

"[t]he courts in those decisions, in essence, treated the concept of 'arising out of' essentially the same as the concept of 'in the course of.' The courts required only that, in the course of work, the claimant was brought within range of the particular peril. As discussed in *Klein*, in our view, that is not the law of Maryland."

*Id.* at 398, 738 A.2d at 334.

*Klein* is contrary to the majority, "traveling employee" rule. *See Larson's* § 25.01, quoted *supra*. *Larson's* adds, however, that "[t]he greatest difficulty arises when the question is whether a traveling employee should receive compensation for injuries due to slipping in the bathtub in a hotel, cutting oneself with a razor, or being hurt while getting a haircut or calling for one's laundry." *Id.* § 25.04, at 6. In our view the difficulty arises because there are, in general, two tests for determining "arising out of" causation. We shall refer to them by the terminology used in *Olinger Construction Co. v. Mosbey*, 427 N.E.2d 910 (Ind.Ct.App.1981), namely, the positional-risk test and the increased risk test.

The increased risk test requires that "the employee be exposed to a quantitatively greater degree of risk than the general public." *Id.* at 913. Under the positional-risk test, "an injury arises out of employment if it would not have occurred if the employee's job had not required him to be in the place where he was injured." *Id.* In *Olinger Construction Co.*, an employee of a construction company was staying in a motel adjacent to the job site which was some 150 miles from the employee's home. The employee was stabbed to death in his motel room by a former co-worker who had been fired four

days before. The Indiana court noted that previous decisions in that state had adopted the positional-risk test, although not explicitly under that name, such that "the rule in Indiana [is] that an accident which befalls a traveling employee arises out of the employment if the employee is at the place where the accident occurs because of his employment." *Id.* at 914. On the basis that Mosbey was a traveling employee who was required to stay in a motel and that he was there in order to discharge his duties, the court, over a dissent,[2] affirmed the award of compensation.[3]

In *Wiseman v. Industrial Accident Commission,* 46 Cal.2d 570, 297 P.2d 649 (1956) (in bank), the employee was a bank vice president who traveled to New York on business at the bank's expense. The employee and a "woman, not his wife but registered as such" died in a fire caused by careless smoking

---

2. The dissent argued that the majority holding struck the term "out of" from Indiana's compensation statute by eliminating the causation requirement. *Olinger Constr. Co.,* 427 N.E.2d at 918 (Sullivan, J., dissenting). This argument is essentially similar to the *Klein* court's rejection of the positional-risk theory.

3. For other cases holding that injuries suffered by traveling employees at the hands of third parties are compensable, see *Arkansas Dep't of Health v. Huntley,* 12 Ark.App. 287, 675 S.W.2d 845, 849 (1984) (affirming award to employee attacked while returning from motel bar to her room on basis of "traveling employee doctrine" because her activities that evening "were a natural and probable consequence or incident of her employment," and thus satisfied the "arising out of" requirement); *Upchurch v. Industrial Comm'n,* 703 P.2d 628, 630 (Colo.Ct.App.1985) (holding that truck driver's gunshot wound, received when he became lost during a delivery and asked for directions, was compensable under the principle that "an employee who is away from home on a business trip for his employer is under continuous workmen's compensation coverage" unless departing on a personal errand); *Hobgood v. Anchor Motor Freight,* 68 N.C.App. 783, 316 S.E.2d 86, 87 (1984) (holding that truck driver's injury suffered during robbery attempt while "in the employer's truck at the point of delivery, whether he was logged on- or off-duty" arose out of and in the course of employment); *Slaughter v. State Accident Ins. Fund Corp.,* 60 Or.App. 610, 654 P.2d 1123, 1126 (1982) (holding that truck driver's injuries suffered in unprovoked bar fight during a forced lay over were compensable under the "general rule of continuous coverage," *i.e.,* that "injuries are compensable when resulting from activities reasonably related to the claimant's travel status").

on the part of one or both of the room's occupants; there also was evidence that the two had been drinking. 297 P.2d at 650. The employee's survivors sought workers' compensation benefits under a statute requiring an injury that "arose out of and was proximately caused by the employment." *Id.* at 651.

The court, speaking through Justice Traynor, concluded that the fatal injury arose out of the employment because: (1) injuries caused by careless smoking are not so remotely connected with the employment as not to be an incident of it; (2) the "fact that the employee had a guest in his room while he was off duty in no way detracted from the fact that he was also there on his employer's business"; (3) traveling employees may entertain guests who smoke in their room; (4) "the risk that such a guest may start a fire and injure the employee is just as much a risk of the employee's presence in the room on his employer's business as the risk that he will himself start a fire by his own careless smoking"; (5) the employee's "immoral and unlawful" purpose in entertaining the particular guest "was so unrelated and collateral to the risk of fire that caused his death that it did not destroy the necessary causal connection between the employment and the death." *Id.* In this regard the court noted that the connection between employment and injury "need not be the sole cause" as long as it is "a contributory cause" of the injury. *Id.* This test for satisfying the arising out of requirement—that a traveling employee's injury be "incidental" to his employment and that the employment be a "contributing cause" to the injury— amounts to the positional-risk test.

In each of the cases cited and described below workers' compensation was awarded to or on behalf of an employee who was traveling on the employer's business. In each case the award was made under a statute which required that the injury arise out of the employment in order to be compensable. In each case the employee was not actively engaged in the employer's business at the time of injury, but the employee suffered the injury on premises, distant from the employee's home, where the employee was staying in order to carry out the employer's business. *See Peterson v. Industrial*

*Comm'n,* 16 Ariz.App. 41, 490 P.2d 870 (1971) (employee suffocated in his sleep when head caught between the slats of rooming house bed); *American Airlines v. LeFevers,* 674 So.2d 940 (Fla.Dist.Ct.App.1996) (flight attendant, on layover, injured when diving into hotel swimming pool); *Brown v. Palmer Constr. Co.,* 295 A.2d 263 (Me.1972) (injury caused by gas stove explosion in rental apartment near work-site while employee preparing a meal during off hours); *Souza's Case,* 316 Mass. 332, 55 N.E.2d 611 (1944) (employee killed in hotel fire during night); *Employers' Liab. Assurance Corp. v. Warren,* 172 Tenn. 403, 112 S.W.2d 837 (1938) (employee fatally injured during early evening when he tripped and fell from hotel porch); *Southern Motor Lines Co. v. Alvis,* 200 Va. 168, 104 S.E.2d 735 (1958) (employee killed in fall from hotel window during nighttime).

Recent cases that have considered injuries resulting from falls in hotel bathtubs or showers have found compensability by applying the general rule that an employee is covered by workers' compensation while traveling. The history of these kinds of cases in New York is illustrative. In *Davidson v. Pansy Waist Co.,* 240 N.Y. 584, 148 N.E. 715 (1925) (per curiam), the New York Court of Appeals denied compensation for injuries incurred in such an accident, basically applying the increased risk test. Then, in *Miller v. F.A. Bartlett Tree Expert Co.,* 3 N.Y.2d 654, 171 N.Y.S.2d 77, 148 N.E.2d 296 (1958), the court approved the award of compensation in such a case. Nevertheless, in *Friedwald v. New York State Insurance Department,* 17 A.D.2d 670, 230 N.Y.S.2d 48 (1962), an intermediate appellate court denied compensation, reasoning that taking a shower was a purely personal act. Most recently, the Court of Appeals, in *Capizzi v. Southern District Reporters, Inc.,* 61 N.Y.2d 50, 471 N.Y.S.2d 554, 459 N.E.2d 847 (1984), resolved the matter.

In *Capizzi* the claimant was a transcriber-typist who had been sent by a New York City court reporting firm to work in Toronto during the taking of depositions there. On the morning following the suspension of the depositions, and in preparation for returning to New York, the claimant stepped into

the hotel bathtub, slipped, and was injured. The New York Court of Appeals reversed the Appellate Division which had upset a compensation award. The reasoning of the Court of Appeals, although couched in terminology sounding like an increased risk test, essentially applies the positional-risk test as demonstrated by the following passages from the court's opinion:

"Traditionally, injuries sustained by an employee while traveling in the business of his employer were compensable if they occurred while the employee was actually acting in furtherance of his employer's business. This theory of compensability has been expanded in recognition of the fact that a change in environment creates a greater risk of injury to the employee so that injuries to a traveling employee may be compensable even if the employee at the time of the accident was not engaged in the duties of his employment."

459 N.E.2d at 848 (citations omitted).

The court referred to a number of cases decided in the Appellate Division, including *Friedwald, supra,* saying:

"In the past this principle has not been applied as liberally to cases where traveling employees sustain injuries while dressing or bathing in preparation for work. The courts have viewed the injuries resulting from such activities as noncompensable, characterizing them as purely personal acts."

*Capizzi,* 459 N.E.2d at 849.

Rejecting the "purely personal acts" rationale, the court held as follows:

"Given the expanded theory of compensability with respect to injuries sustained by traveling employees involving incidents other than dressing or bathing, it is difficult to reconcile a compensation award to an employee who, when returning to her hotel after dinner, slipped and fell on a sidewalk with the denial of an award to claimant in the present matter, who slipped and fell in a hotel bathtub in preparation for her return to her place of employment in

New York City. Both employees sent by their employers on a business trip were removed from their normal environments, thereby increasing the risk of injury; and, as a result, were injured while engaged in 'personal acts' attendant to their employment, although not participating in the actual duties of their employment.

"Moreover, it is difficult to reconcile these cases denying compensation with those in which awards have been made to employees who are injured while dressing or bathing on their employer's premises, an environment with which they are presumably familiar, and as a result less likely to be injured."

*Id.* (citation omitted).

Thus, inasmuch as the increased risk perceived by the New York court is an attribute of the unfamiliar surroundings in which traveling employees find themselves, seemingly in all bathtub cases that increased risk will produce the same result, namely, compensability, as the positional-risk test.

Also finding compensability is *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Adler,* 340 F.2d 799 (D.C.Cir.1964). In the District of Columbia, prior to 1982, claims made by private sector employees for workers' compensation were governed by the Longshore and Harbor Workers' Compensation Act. *Evans Fin. Corp. v. Director, Office of Workers' Compensation Programs,* 161 F.3d 30, 32 & n. 1 (D.C.Cir.1998). That federal statute defines "injury" as an "accidental injury or death arising out of and in the course of employment." 33 U.S.C. § 902(2). The claimant in *Adler* was a delegate to a union convention in Toronto whose expenses were paid by the union. The injury occurred when the claimant slipped in the bathtub in his room at the convention headquarters hotel, as he was preparing to attend the convention banquet. Holding that the injury was one arising out of the employment, the court affirmed an award of compensation. The court reasoned that the claimant was "injured while in furtherance of the purpose for which he had been sent" and that bathing was "an activity

reasonably related to and properly to have been anticipated as an ordinary incident of the mission." *Adler,* 340 F.2d at 800. Then, flatly rejecting what we are calling the increased risk test, the court said: "Nor is the test of recovery to be found in 'a causal relation between the nature of [the] employment of the injured person and the accident.'" *Id.* at 801 (quoting *O'Leary v. Brown–Pac.–Maxon, Inc.,* 340 U.S. 504, 507, 71 S.Ct. 470, 472, 95 L.Ed. 483, 486 (1951)).

The Pennsylvania workers' compensation statute requires that an injury be one "arising in the course of [a worker's] employment and related thereto." Purdon's Pa. Stat. Ann. tit. 77, § 411 (West 1992). In *Lenzner Coach Lines v. Workmen's Compensation Appeal Board,* 158 Pa.Cmwlth. 582, 632 A.2d 947 (1993), the claimant, a charter bus driver, was on standby status during a one day layover on a trip to Atlantic City. He slipped while stepping into a hotel bathtub and was injured. The court concluded that there was substantial evidence to support the agency's findings "that Claimant's actions at the time of his injuries furthered the business of Employer and that he occupied himself consistently with his terms of employment in a manner reasonably incidental thereto." 632 A.2d at 950.

The personal act basis for rejecting compensability was relied upon in *Breland & Whitten v. Breland,* 243 Miss. 620, 139 So.2d 365 (1962), where the claimant, a traveling employee, fell while taking a shower. This decision relied on two cases that now lack precedential value.[4] Relief was also denied in *Harrison v. Lustra Corp. of America,* 84 Idaho 320, 372 P.2d 397 (1962), where the claimant was similarly injured. That case, however, is distinguishable from the case before us in that Harrison apparently traveled generally, without a fixed

---

**4.** First, the *Breland* court relied on *Davidson,* 240 N.Y. 584, 148 N.E. 715, discussed in the text, *supra.* As noted, that case was overruled by *Capizzi,* 61 N.Y.2d 50, 471 N.Y.S.2d 554, 459 N.E.2d 847. Second, *Breland* relied on *Gibbs Steel Co. v. Industrial Commission,* 243 Wis. 375, 10 N.W.2d 130 (1943), which later was abrogated by statute. *See* Wis. Stat. Ann. § 102.03(1)(f) (West 1997); *Wisconsin Elec. Power Co. v. Labor & Indus. Review Comm'n,* 226 Wis.2d 778, 595 N.W.2d 23, 27 (1999) (noting the abrogation).

base of operations, had not been directed by the employer to be at the place where the accident occurred, and paid his own expenses.

In light of the foregoing review, we are not persuaded to distinguish the bathroom fall and the eating cases from cases in which the injury occurs while the traveling employee is engaged in other ordinary activity, such as sleeping, walking, and opening a window. Absent facts indicating a distinct departure by the employee on a personal errand that would not be in the contemplation of the parties, an injury to a traveling employee generally is compensable so long as it occurred as a result of an activity reasonably incidental to the travel that the employer required. Thus, even injuries suffered by traveling employees as a result of common perils of everyday life or as a result of purportedly personal acts generally are compensable. Inasmuch as, under ordinary circumstances, a traveling employee's eating and bathing are reasonably incidental to the travel required by the employer, injuries resulting from these activities are compensable. Reverting to the terminology that we have used to describe the cases reviewed above, the rule which we adopt is substantially the positional-risk test, as opposed to the increased risk test.

In view of the foregoing, the judgment of the Court of Special Appeals is reversed, and *Klein v. Terra Chemicals International, Inc.,* 14 Md.App. 172, 286 A.2d 568, is disapproved.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THIS CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF THE PETITIONER, PATRICIA MULREADY.**

**COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS, UNIVERSITY RESEARCH CORPORATION**

AND HARTFORD UNDERWRITERS INSURANCE COMPANY.