674 So.2d 940 (1996)
AMERICAN AIRLINES and Alexsis, Appellants,
v.
Sheree Renee LeFEVERS, Appellee.
No. 95-4364.
District Court of Appeal of Florida, First District.
June 13, 1996.
Rehearing Denied July 1, 1996
*941 Robert L. Teitler of Walton, Lantaff, Schroeder & Carson, Miami, for Appellants.
Jeffrey S. Breslow of Druckman, Kristal & Breslow, P.A., Miami, for Appellee.
DAVIS, Justice.
American Airlines and Alexsis (E/C) appeal an order of the Judge of Compensation Claims (JCC), which determined that the claimant's accident was compensable and awarded benefits. The JCC determined that the claimant's accident was compensable under section 440.092(4), Florida Statutes (Supp.1994), the personal comfort doctrine and, in the alternative, the bunkhouse rule. Because the legislature did not abrogate the personal comfort doctrine or the bunkhouse rule in the 1994 amendments to section 440.092(4), Florida Statutes, and because the JCC's determination that the claimant was actively engaged in the duties of her employment under section 440.092(4), Florida Statutes (Supp.1994), at the time of her accident is supported by competent substantial evidence, we affirm.
The parties stipulated to the following facts:
The claimant is an international flight attendant with American Airlines. Her job duties are described in the manual and include conducting security checks, handling meal service and assisting deplaning passengers. On June 28, 1994, the claimant flew from Atlanta to Miami arriving at 8:30 a.m. in order to depart on her flight from Miami at approximately 10:00 a.m. The flight lasted between seven and eight hours with the last segment ending in Puerto Plata, Dominican Republic. She did, but was not required to board a bus arranged for by American Airlines to transport her to the Flamingo Resort. The Flamingo Resort is designated by American Airlines as a hotel for flight attendants on layovers.
The claimant could have done anything when she arrived to Puerto Plata, including having a friend pick her up at the airport. All that was required of the claimant was that she leave a contact number. The claimant arrived at the hotel at approximately 9:30 p.m. with the rest of *942 the crew. After which she showered, put on her bathing suit and went to the pool for a swim with another flight attendant, L.D. Crumley. The claimant dove into the pool, struck her head on the bottom and emerged a C-6 incomplete quadriplegic. The claimant was flown back to Miami, was taken to the University of Miami, School of Medicine, Department of Neurosurgery where she was successfully operated on by Bart Green, M.D., resulting in no paralysis. She is currently employed in her original position with American Airlines.
The Flight Attendant Employment Manual provides that a flight attendant may be scheduled for more than an eight hour duty during a twenty-four hour consecutive period only if ten or more hours rest is given. Therefore, when the claimant arrived at Puerto Plata at the end of her flight segment, she could not have flown for ten hours. Since the time of the claimant's accident was approximately 11:30 p.m., she could not have been called to fly during that period of time. However, she could have been called by American Airlines to advise of changes in her flight schedule after the designated ten hours of rest.
The claimant was paid approximately $24 per hour for flying time and $1.50 per hour for layover time from the time she left base until she returned to base. There are other incentive pay increments such as working the galley, flying at night, etc., which were inapplicable to the claimant on the flight to Santo Domingo.
The claimant testified that her stay at the hotel was pre-paid by American Airlines. The claimant explained that, because she has a pool in the back yard where she lives, it was not unusual for her to dive into a pool. The claimant further testified that she went swimming at the hotel to relax because she had been up since 4:00 a.m. that day.
In finding that the claimant's accident was compensable, the JCC determined that the claimant fell within the classification of a "traveling employee" under section 440.092(4), Florida Statutes (Supp.1994), and was actively engaged in the duties of her employment at the time of her accident. The JCC determined that section 440.092(4), Florida Statutes (Supp.1994), did not abrogate the personal comfort doctrine, nor did the 1994 statute abrogate the claimant's status as an "on-call" employee. As an alternative basis for a finding of compensability, the JCC determined that the claimant's accident was compensable under the bunkhouse rule. The JCC further determined that the claimant's employment was a major contributing cause of her injury.
The E/C argue that the 1994 amendments to section 440.092(4) effectively abrogated the personal comfort doctrine and the bunkhouse rule as it pertains to traveling employees. Chapter 93-415, Laws of Florida, effective January 1, 1994, provides:
440.092 Special requirements for compensability; deviation from employment; subsequent intervening accidents.
(4) TRAVELING EMPLOYEES.An employee who is required to travel in connection with his employment who suffers an injury while in travel status shall be eligible for benefits under this chapter only if the injury arises out of and in the course of his employment while he is actively engaged in the duties of his employment. This subsection applies to travel necessarily incident to performance of the employee's job responsibility but does not include travel to and from work as provided in subsection (2), which shall include travel necessary to and from the place where such duties are to be performed and other activities reasonably required by the travel status.
We hold that, under the express language of the 1994 amendments to section 440.092(4), the legislature did not abrogate either the personal comfort doctrine or the bunkhouse rule. If the legislature had intended to abrogate the personal comfort doctrine or the bunkhouse rule when it amended section 440.092(4), it could have done so.
Whether a claimant was "actively engaged in the duties of his employment" under section 440.092(4), Florida Statutes (Supp.1994), at the time of an accident is a question of fact for the JCC. In the present case, we find that the JCC's conclusion that *943 the claimant was actively engaged in the duties of her employment under section 440.092(4), Florida Statutes (Supp.1994), at the time of her accident is supported by competent substantial evidence. The JCC's determination that the claimant's accident was compensable under both the personal comfort doctrine and the bunkhouse rule is also supported by competent substantial evidence. We further hold that the JCC correctly concluded that the claimant's employment was the major contributing cause of her injury under section 440.02(32), Florida Statutes (Supp.1994). See Vigliotti v. K-Mart Corp., 21 Fla. L. Weekly D654, ___ So.2d ___ (Fla. 1st DCA March 13, 1996).
Accordingly, the order of the JCC is AFFIRMED.
BARFIELD, C.J., and ERVIN, J., concur.