REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 291

SEPTEMBER TERM, 2013

---

DALLAS E. GRAVETTE

v.

VISUAL AIDS ELECTRONICS, ET AL.

---

Wright,
Matricciani,
Salmon, James P.
  (Retired, Specially Assigned),

JJ.

---

Opinion by Salmon, J.

---

Filed: April 29, 2014

This appeal concerns a workers' compensation claimant who, when injured, was a "traveling employee." The term "traveling employee" as used in workers' compensation cases means an employee who is required to travel away from his employer's premises in order to perform his job. *Venture-Newberg Perini Stone and Webster v. Illinois Workers' Compensation Commission*, 981 N.E.2d 1091, 1095 (Ill. App., Fourth Dist. 2012). The issue presented is whether the injury suffered by the traveling employee in this case arose out of and in the course of his employment.

The *seminal* case in Maryland involving the compensability of an injury suffered by a traveling employee is *Mulready v. University Research*, 360 Md. 51 (2000). *Mulready* involved a traveling employee who slipped and fell while taking a shower in a hotel room. *Id*. at 53. The *Mulready* Court concluded that the slip and fall injury arose out of the worker's employment and was compensable. *Id*. at 66. In reaching this conclusion, the Court announced the rule to be applied in traveling employee cases, viz:

> Absent facts indicating a distinct departure by the employee on a personal errand that would not be in the contemplation of the parties, an injury to a traveling employee generally is compensable so long as it occurred as a result of an activity reasonably incidental to the travel that the employer required. Thus, even injuries suffered by traveling employees as a result of common perils of everyday life or as a result of purportedly personal acts generally are compensable. Inasmuch as, under ordinary circumstances, a traveling employee's eating and bathing are reasonably incidental to the travel required by the employer, injuries resulting from these activities are compensable. Reverting to the terminology that we have used to describe the cases reviewed above, the rule which we adopt is substantially the positional-risk test, as opposed to the increased risk test.

*Id*. at 66.

Earlier in the *Mulready* opinion, 360 Md. at 59, the Court quoted with approval from

*Olinger Construction Company v. Mosbey*, 427 N.E.2d 910 (Ind. Ct. App., 1981) as follows:

> The increased risk test requires that "the employee be exposed to a quantitatively greater degree of risk than the general public." *Id*. at 913. Under the positional-risk test, "an injury arises out of employment if it would not have occurred if the employee's job had not required him to be in the place where he was injured." *Id*.

This case *sub judice* has at least two important features also found in *Mulready*. The

claimants in both cases were injured at a hotel where the worker was assigned by an

employer to work on a temporary basis. Also, as in *Mulready*, here the claimant was off-duty

when the accident occurred. But in this case, unlike *Mulready*, the employee slipped and fell

on a dance floor located in the hotel, rather than in his assigned hotel room. The question to

be decided boils down to whether engaging in a recreational activity like dancing while on

premises where the employee is assigned to stay, is an activity [like eating in a hotel

restaurant or taking a shower], "reasonably incidental to the travel required by the

employer[.]" *Mulready*, 360 Md. at 66. The Maryland Workers' Compensation Commission

("the Commission") and the trial judge in this matter, answered that question in the negative.

For the reasons set forth below, we hold a contrary view and shall reverse the judgment

entered by the circuit court.

## I.

Dallas E. Gravette was injured on July 10, 2011 in Prince George's County. At the

time of his injury he was an employee of one of the appellees in this case, *Visual Aids*

*Electronics* (the "employer").[1] Mr. Gravette filed a workers' compensation claim as a result of his fall, after which an evidentiary hearing was held before the Commission. The Commission filed an order denying the claim on the grounds that Mr. Gravette "did not sustain an accidental injury arising out of and in the course of employment as alleged to have occurred on July 10, 2011." Mr. Gravette filed a petition for judicial review of the Commission's decision in the Circuit Court for Prince George's County. Gravette's case was heard, non-jury, on January 31, 2013. The parties stipulated to all the facts that were relevant to the sole issue before the circuit court, which was, "Did the July 10, 2011 accident arise out of and in the course of Gravette's employment?" Set forth below in part II is a summary of the undisputed facts.

## II.

Visual Aid Electronics ("employer") is in the business of providing "audio visual equipment, including computer equipment, and technical staff to set up and service the equipment in . . . hotels and convention centers." Prior to the accident, the employer contracted to provide its services to a customer at the Gaylord National Resort and Convention Center (hereafter "the Gaylord Center") located in Prince George's County.

Mr. Gravette, at all times here pertinent, was a resident of Idaho. To fulfill its contract to provide equipment and services at the Gaylord Center, the employer made arrangements

---

[1]The other appellee is the employer's workers' compensation insurer, Traveler's Property Casualty Company.

for Mr. Gravette to stay at the Gaylord Hotel, which is part of the Gaylord Center. Gravette's employer paid for Gravette's travel expenses from Idaho to Maryland and for the price of his hotel room.

Mr. Gravette was assigned to work at the hotel on behalf of his employer, and to stay there between July 7 and July 16, 2011. On July 10, 2011, the date of his injury, Gravette worked at the hotel between 7:00 a.m. and 3:00 p.m. as an audio visual technician for his employer. The accident occurred at the Pose Ultra Lounge & Nightclub (hereafter "the Nightclub"), which is a facility located in the Gaylord Hotel. Gravette was injured at about midnight on July 10, 2011.

Entry into the Nightclub is restricted to persons registered at the Gaylord Hotel and their guests. Gravette, while off-duty, was dancing when he slipped on some liquid on the dance floor and fell, injuring his pelvis. There was no indication that Gravette was intoxicated at the time he was injured.

Gravette was not in the Nightclub at the request or direction of his employer nor was he engaged in any "specific activity that was for the benefit" of his employer.

**III.**

The trial judge concluded, in a written opinion, that Gravette's injuries were not compensable. The trial judge explained:

> After review of *Mulready* and the cases cited therein, this Court concludes that [Gravette] is not entitled to workers' compensation benefits. *Mulready* determined that injuries "incidental to the travel requested by employer" such as eating and bathing are compensable. *Mulready*, *supra* at

-4-

66. Further, "a distinct departure by the employee on a personal errand that would not be in the contemplation of the parties" is not compensable. *Id*. at 66. These distinctions are made on a case by case basis.

This Court concludes, based on the facts of this case, that [Gravette's] act of going to the Nightclub and dancing was not "reasonably incidental to the travel required by the employer." *Id*. at 66, 756 A.2d at 582. The activity in this case is distinguishable from examples of eating and bathing as necessary activities incidental to travel, as delineated by the Court of Appeals, which would be "in the contemplation of the parties" when an employee goes on a business trip. This Court concludes, however, that dancing at a nightclub with individuals who are not clients of [the employer] is not incidental and would not be in contemplation of the parties. This is a purely personal errand by [Gravette] and not something that would be anticipated by [the employer]. This falls outside the spectrum of necessary activities that are incidental to travel. Therefore, [Gravette] did not sustain an injury arising out of and in the course of his employment and is not entitled to workers' compensation benefits.

## IV. *Analysis*

### A. Standard of Review

Our review of workers' compensation proceedings is governed by Md. Code, Labor & Employment Article (2008 Repl. Vol.) § 9-745, which provides, in relevant part, as follows:

> (b) ***Presumption and burden of proof.*** - In each court proceeding under this title:
> (1) the decision of the Commission is presumed to be *prima facie* correct; and
> (2) the party challenging the decision has the burden of proof.
> (c) ***Determination by court***. - The court shall determine whether the Commission:
> (1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia;
> (2) exceeded the powers granted to it under this title;

-5-

. . .

       (e) *Disposition.* - (1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the commission.

            (2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

The presumption set forth in section 9-745(b) that the decision of the Commission is correct, is inapplicable when, as here, there are no disputed factual issues and therefore the court is presented solely with a question of law. *See Walmart Stores, Inc. v. Holmes*, 416 Md. 346, 357 (2010). Likewise, when, as in the present case, the trial judge's decision is based exclusively on a question of law, an appellate court gives no deference to the trial court's decision but instead simply examines that decision for "legal correctness." *Id*. at 358.

## B. *The Merits*

Prior to the *Mulready* case, this Court considered a claim for workers' compensation by a claimant who was required by his employer to attend a conference at the Mayflower Hotel in Washington, D.C. *Klein v. Terra Chemicals International, Inc.*, 14 Md. App. 172, 174 (1972). The employer agreed to pay its employee's [George Klein] expenses while at the convention, which was expected to last several days. *Id*. While eating dinner at the hotel dining room on the first night of the convention, Klein choked on a piece of meat and, shortly thereafter, died. *Id*. We held that the injury was not compensable and applied, in essence, the increased-risk test. Under that test, to be compensable, "the causative danger must be

-6-

peculiar to the work and not common to the neighborhood; it must be incidental to the character of the business and not independent of the relation of master and servant." *Id*. at 176. In *Mulready*, the Court explicitly "disapproved" of our decision in *Klein*, 360 Md. at 66.

The Court's ruling in *Mulready* was in accord with the majority rule in this county concerning compensability of injuries suffered by traveling employees. That majority rule was summarized in 2A Larson & L.K. Larson, *Larson's Workers' Compensation Law* § 25.01 at 1-2 (2000) (hereinafter "*Larson's*"). The *Mulready* Court quoted with approval what was said in section 25.01 of *Larson's* as follows:

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.

360 Md. at 55. (Footnote omitted).

In *Mulready*, Judge Rodowsky, speaking for the Court, cited six cases from sister jurisdictions that followed the majority rule as set forth in *Larson's*, viz:

> In each of the cases cited and described below workers' compensation was awarded to or on behalf of an employee who was traveling on the employer's business. In each case the award was made under a statute which required that the injury arise out of the employment in order to be compensable. In each case the employee was not actively engaged in the employer's business at the time of injury, but the employee suffered the injury on premises, distant from the employee's home, where the employee was staying in order to carry out the employer's business. *See Peterson v. Industrial Comm'n.*, 16 *Ariz.App.* 41, 490 P.2d 870 (1971) (employee suffocated in his sleep when head caught

between the slats of rooming house bed); *American Airlines v. LeFevers*, 674 So. 2d 940 (Fla. Dist. Ct.App. 1996) (flight attendant, on layover, injured when diving into hotel swimming pool); *Brown v. Palmer Constr. Co.*, 295 A.2d 263 (Me. 1972) (injury caused by gas stove explosion in rental apartment near work-site while employee preparing a meal during off hours); *Souza's Case*, 316 Mass. 322, 55 N.E. 2d. 611 (1944) (employee killed in hotel fire during night); *Employer's Liab. Assurance Corp. v. Warren*, 172 Tenn. 403, 112 S.W.2d 837 (1938) (employee fatally injured during early evening when he tripped and fell from hotel porch); *Southern Motor Lines Co. v. Alvis*, 200 Va. 168, 104 S.E.2d 735 (1958) (employee killed in fall from hotel window during nighttime).

*Mulready*, 360 Md. at 61-62.

Of the six cases mentioned, in the excerpt just quoted, only one involves an employee engaged in a recreational activity when injured, i.e., *American Airlines v. LeFevers*, 674 So. 2d 940 (Fla. 1st Dist. Court of Appeals (DCA) 1996). In the *American Airlines* case, the claimant, Sheree LeFevers, was employed by American Airlines as a flight attendant. *Id.* at 941. Ms. LeFevers, on June 28, 1994, flew from Atlanta to Miami, and, after a layover, from Miami to the Dominican Republic. At that point, airline rules required that she be on layover status for at least ten hours. Ms. LeFevers, along with the rest of the flight crew, were driven to the Flamingo Resort Hotel in the City of Puerto Plata where they each had rooms paid for by the airline. *Id.* at 941-42. Ms. LeFevers arrived at the hotel at 9:30 p.m., took a shower, changed into a bathing suit, and went down to the hotel pool along with another flight attendant. *Id.* at 941-42. She then dove into the pool, hit her head, and was severely injured. *Id.* at 942.

As a result of her injury, Ms. LeFevers filed a workers' compensation claim in

Florida, where she resided. At the workers' compensation hearing she explained that, "because she ha[d] a pool in the back yard where she lives, it was not unusual for her to dive into a pool." *Id*. at 942. She further testified "that she went swimming at the hotel to relax because she had been up since 4:00 a.m." on the date of the accident. *Id*. In the *American Airlines* case, the court ruled that the workers' compensation claims judge had before him competent evidence to support his ruling that the injury was compensable.[2] *Id*. at 943.

Another case from the same court that decided *American Airlines v. LeFevers* that involved a traveling airline employee who was engaged in recreational activities when injured is *Gray v. Eastern Airlines, Inc.*, 475 So.2d 1288 (Fla. 1st DCA 1985). In *Gray*, the claimant worked for Eastern Airlines and was injured during a two-day layover in Rochester, New York. The airline paid for the claimant's lodging at a Holiday Inn during the layover. While a guest at the Holiday Inn, the claimant went to a nearby YMCA to play basketball. Holiday Inn guests were entitled to use the YMCA without becoming members, although they were required to pay a $4 entrance fee for each day of use. *Id*. at 1289. During the basketball game, the claimant broke his nose, and later filed a workers' compensation claim

---

[2]At oral argument before us, counsel for the employer/insurer was asked to distinguish the subject case from *American Airlines v. LeFevers*, *supra*. Counsel attempted to distinguish the case by pointing out that the recreational activity in which the off-duty flight attendant was engaged when injured was something the claimant regularly did while at home, while here, there was no evidence that the claimant regularly engaged in dancing when in Idaho. We are not convinced that this is a meaningful distinction – at least under the test set forth in *Mulready*.

against his employer.[3]

In *Gray*, the claimant's request for workers' compensation benefits was denied by the Workers' Compensation Deputy Commissioner, but the Florida appellate court reversed that decision. *Id*. at 1288. In *Gray*, the court said:

The parties do not reference any closely analogous Florida case involving a traveling employee injured while engaging in sports activity. But compensation for such an employee injured in personal recreation was awarded in *Blakeway v. Lefebure Corp.*, 393 So.2d 928 (La.App. 4th Cir. 1981). The claimant in that case was injured when he dived into the shallow part of a motel swimming pool during a two-week training seminar paid for by his employer. In reversing a lower court's denial of benefits, *Blakeway* held:

The employer had to contemplate that plaintiff and the other employees would participate in some recreation during their two-week stay for the seminar. One could hardly expect these employees to retire to their rooms and remain practically immobile on each day when the classes ended . . . Plaintiff was not merely pursuing his own business or pleasure because he was entitled to some reasonable recreation as a part of his employer's business of having to remain in a motel in Cedar Rapids, Iowa, for two weeks . . .

Our cases have clearly recognized the general rule that an employee whose work entails travel away from the employer's premises remains within the course of employment except when "there is a distinct departure for a nonessential personal errand." *N & L Auto Parts v. Doman*, 111 So.2d 270, 271 (Fla. 1st DCA 1959). An employee's motel during such travel status has also been deemed to be his place of employment. *Hardaway Construction Co. v. Brooks*, 416 So.2d 837 (Fla. 1st DCA 1982). A foreseeable, nonprohibited, off-premises refreshment break has not been considered to be a deviation removing a claimant from the course and scope of employment. *Holly Hill*

_____

[3]The claimant in the *Gray* case testified at the workers' compensation hearing that he was playing basketball to prepare for an Eastern Airlines sponsored basketball tournament that was scheduled in Atlanta, which was his home base.

-10-

*Fruit Products, Inc., v. Krider*, 473 So.2d 829 (Fla. 1ˢᵗ DCA 1985). Entitlement to compensation would therefore appear to be reasonably arguable for claimant in the present case if he had incurred his injury in a store or restaurant while purchasing necessary food or drink. *See Cunningham v. Scotty's Home Builders*, 9 FCR 1 (1973), *cert. denied*. 307 So.2d 182 (Fla. 1974). We conclude that for the claimant in this case, under the circumstances here in question including an enforced lay-over of more than minimal duration, exercise at a nearby facility should be regarded as necessary for the same reasons underlying extension of course of employment in the foregoing cases to other activities reasonably required for personal health and comfort.

475 So.2d at 1289-90. (footnote omitted)(emphasis added).

The same appellate court that decided the *American Airlines* and *Gray* cases, makes clear in *Eastern Airlines v. Rigdon*, 543 So.2d 822 (Fla. 1ˢᵗ DCA 1989) that not all injuries suffered by a traveling employee while engaged in recreational activities are compensable; instead, only those activities that are reasonable and foreseeable are compensable. *Id*. at 823. On that basis, the *Rigdon* court held that a traveling employee (a flight attendant on a 24-hour layover) who was injured while downhill skiing at a lodge 58 miles from the claimant's hotel, was not entitled to compensation. *Id*. at 822. Distinguishing *Gray*, the court said: "We cannot conclude in the instant case that a 58-mile day-trip to pursue one's love of skiing is either a minimal deviation or a reasonable and foreseeable activity, especially in light of the nature of the sport of skiing[,] which involves a great amount of risk." *Id*. at 823.

Among the cases cited by appellees in support of their position that appellant's injury was not compensable is *Houck v. Tarragon Management, Inc.*, 4 So.3d 73 (Fla. 1ˢᵗ DCA, 2009). *Houck* is also a case applying Florida law. In *Houck*, an employee who lived in Jacksonville, Florida was selected by her employer to attend a training session in Ft.

-11-

Lauderdale, Florida. *Id*. at 74. The training session was to commence on Monday morning, September 9, 2002, and to last the entire week. *Id*. at 75. The employee, for personal reasons, decided to arrive at the conference site two days early to spend time with a friend. *Id*. at 75-76. After settling in at her employer-provided residence, the employee went window shopping and dancing. *Id*. at 75. She left the nightclub where she had been dancing at 2 a.m. [on Sunday] and was fatally injured when she was struck by a motor vehicle while crossing a street. *Id*. The *Houck* court held that the employee (Ellen Houck) did not fit into the category of a traveling employee. The court explained:

> Under the general rule, where an employee, as part of her duties, must remain in a particular place or locality until directed otherwise, <u>or for a specified length of time, such an employee is not expected to wait immobile, but may indulge in any reasonable activity at that place, and if she does so, the risk inherent in such activity is an incident of employment</u>. *See Garver v. E. Airlines*, 553 So.2d 263, 267 (Fla. 1st DCA 1990). The test as to whether a specific activity is considered to be within the scope of employment or purely personal is the reasonableness of the activity. Furthermore, a traveling employee may satisfy physical needs, including relaxation. *Id*.
>
> One sees a common strain in "traveling employee" cases-either a forced layover or a period of "down time" *during* a business trip in a location subject to the employer's requirements. The most prevalent example finds a flight attendant away from home, in between assignments. *See, e.g., Am. Airlines v. LeFevers*, 674 So.2d 940, 942 (Fla. 1st DCA 1996); *Garver*, 553 So.2d 263; *Gray v. E. Airlines*, 475 So.2d 1288 (Fla. 1st DCA 1985).
>
> Here, <u>Ellen, although on a trip, was not a "traveling employee" when the accident occurred</u>. For purely personal reasons, Ellen decided to fly to Ft. Lauderdale on the Saturday before her business responsibilities were to commence the following Monday morning. She planned early travel in order to spend Saturday night, and all day Sunday, engaged in purely leisure activities with a friend.

Thus, unlike a flight attendant obligated to remain away from home in between assignments, Ellen's presence in Ft. Lauderdale at the time of the accident was purely voluntary. That she engaged in an impromptu business discussion over dinner did not alter her status. Because Ellen did not fall into the category of "traveling employee" at the time of the accident, the general rule applicable to such employees did not apply to her. With reference to the statute, no requirement of the [Employer] led Ellen to Ft. Lauderdale on Saturday.

*Id*. at 75-76. (Emphasis added).

As can be seen, the *Houck* court reiterated the reasonable activity test enunciated in prior Florida cases. *Id*. *Houck*, however, is not a case that supports appellees' position. First, the court did not indicate that going dancing was an unreasonable activity as appellees seem to suggest.[4] More important, in the case at bar, the claimant was indisputably a

_____

[4]The appellees cite *Houck* for the following propositions:

The [*Houck*] court reasoned that claimant may have been in the course of her employment while traveling from the airport to the employer provided residence and possibly during dinner where some business discussions occurred. However, the business connection was severed when the claimant went window shopping and to the night club. *Id*. at 76.

The appellees take what the *Houck* court said out of context. Earlier the *Houck* court, 4 So.3d at 76 said:

Although Ellen was not a traveling employee at the time of her accident, workers' compensation benefits may have been available had she been in the course and scope of her employment when the accident occurred. Here, Ellen was in the course and scope of her employment while traveling from the airport to the [employer's] condominium and, perhaps, during the business discussions over dinner. The connection to employment, however, broke once Ellen . . . went window shopping. Travel to a night club did not restore such connection. Consequently, Ellen was not in the course and

(continued...)

-13-

"traveling employee" when the injury occurred, whereas in *Houck* the claimant was not.

In the case of *McCann v. Hatchett*, 19 S.W.3d 218 (Tenn. 2000), the Tennessee Supreme Court considered whether the death by drowning of a traveling employee was compensable. Donald King was employed by a company that was based in Memphis, Tennessee. Mr. King, and some other employees were sent by their employer to lay carpet at a motel in Rutland, Vermont. *Id*. at 220. While in Rutland, Mr. King, at his employer's expense, stayed at a Days Inn motel. *Id*. While off duty, at approximately 10 p.m., Mr. King drowned in the Days Inn pool. *Id*. The exact circumstances of Mr. King's death were not disclosed in the opinion.

A representative of Mr. King's estate sought workers' compensation benefits for Mr. King's son plus reimbursement of funeral expenses. The employer filed a summary judgment motion contending that the drowning death was not compensable because it did not arise out of or in the course of King's employment. *Id*. The *McCann* court, in rejecting the employer's argument, commenced its analysis by reviewing previous Tennessee cases, viz:

> In the following cases, the Court found that the traveling employee's injury

---

[4](...continued)
scope of her employment at the time of the accident as a matter of law.

The portion of the *Houck* opinion relied upon by appellees has nothing to do with cases dealing with injuries to workers who when injured, are traveling employees.

or death arose out of and in the course of the employment: *Pool v. Metric Constructors, Inc.*, 681 S.W.2d 543 (Tenn. 1984) (Tennessee employee injured in vehicle accident returning home after having worked in Mississippi); *Watson v. United States Fire Ins. Co.*, 577 S.W.2d 668 (Tenn.1979) (East Tennessee-based employee injured in vehicle accident en route to training program in West Tennessee); *West Tennessee Nix-A-Mite Sys., Inc. v. Funderburk*, 208 Tenn. 381, 346 S.W.2d 250 (1961) (employee killed in vehicle accident after having deviated from usual route for personal reasons); *Gregory v. Porter*, 204 Tenn. 582, 322 S.W.2d 591 (1959) (employee killed in vehicle accident returning home from out-of-town trip on employer's business); *Carter v. Hodges*, 175 Tenn. 96,132 S.W.2d 211 (1939) (Tennessee employee killed in hotel fire in Georgia while on business of employer); *Employers' Liability Assurance Corp. v. Warren*, 172 Tenn. 403, 112 S.W.2d 837 (1938) (employee's fall from hotel's second-story porch caused fatal injuries).

In contrast, the Court found in the following cases that the traveling employee's injury or death did *not* arise out of and in the course of the employment: *Isabell v. Ren, Corp.*, No. 01S01-9301-CV-00003, 1993 WL 835552, at *1 (Tenn. Aug 26, 1993) (Tennessee employee working in Florida injured knee when she slipped and fell leaving restaurant after dinner); *Smith v. Royal Globe Ins. Co., Inc.*, 551 S.W.2d 679 (Tenn.1977) (Tennessee employee injured in vehicle accident returning home from Virginia job site); *Knox v. Batson*, 217 Tenn. 620, 399 S.W.2d 765 (1966) (employee working away from home killed by "lethal gas" in motel room); *Timmerman v. Kerr Glass Mfg. Co.*, 203 Tenn. 543, 314 S.W.2d 31 (1958) (Tennessee employee killed on weekend trip en route from Kentucky job site to Memphis); *Jackson v. Clark & Fay, Inc.*, 197 Tenn. 135, 270 S.W.2d 389 (1954) (Tennessee employee working in Arkansas killed by tornado while riding in employer's truck from job site to motel); *Underwood Typewriter Co. v. Sullivan*, 196 Tenn. 238, 265 S.W.2d 549 (Tenn. 1954) (Tennessee employee training in Oklahoma killed in vehicle accident on day off); *Lumbermen's Mut. Cas. Co. v. Dedmon*, 196 Tenn. 94, 264 S.W.2d 567 (1954) (Knoxville-based employee, who had finished a customer visit in Morristown, killed as he crossed street after leaving a fishing tackle shop); *Thornton v. RCA Serv. Co., Inc.*, 188 Tenn. 644, 221 S.W.2d 954 (1949) (employee stopped for lunch at highway restaurant between Norris and Knoxville and was killed by "a stranger who was insane, or drunk 'or otherwise irresponsible.'").

*Id*. at 220-21.

The Tennessee Supreme Court next examined several out-of-state cases, viz:

In other jurisdictions, courts tend to look more closely at the nature of the activity involved. Thus, while approving the use of an all-terrain vehicle as reasonable recreational activity for a traveling employee, the court rejected compensability where the vehicle had been operated recklessly. *See, e.g., Jensen v. Indus. Comm'n*, 305 Ill.App.3d 274, 238 Ill.Dec. 468, 711 N.E.2d 1129 (1999), *appeal denied* 185 Ill.2d 628, 242 Ill.Dec. 138, 720 N.E.2d 1093 (1999). Similarly, depending upon the particular facts, the employee's activity was held to be a "distinct departure" or "deviation" from the employment, thereby relieving the employer of liability. *See, e.g., Silver Eng'g Works, Inc. v. Simmons*, 180 Colo. 309, 505 P.2d 966 (1973) (en banc) (employee's trip to beach where he drowned was deviation from his employment); *Volk v. Int'l Harvester Co.*, 252 Iowa 298, 106 N.W.2d 649 (1960) (employee's trip to neighboring town for social visit constituted deviation from employment); *Buczynski v. Indus. Comm'n of Utah*, 934 P.2d 1169 (Utah Ct.App. 1997) (employee's weekend social visit to town 150 miles from convention site prior to convention's start was "personal diversion" and injury in hotel hot tub was not compensable); *Carr v. Workmen's Compensation Appeal Bd.*, 671 A.2d 780 (Pa.Commw.Ct.1995) (employee's 35-mile trip from the work site to Boston to go sightseeing and drinking was personal trip and not part of employment).

As stated in 2 Arthur Larson & Les K. Larson, *Arthur Larson's Workers' Compensation Laws*, §25.00 (1998), the majority rule is that "[a]n employee whose work entails travel away from the employer's premises is generally considered to be within the course of his or her employment continuously during the trip, except when there is a distinct departure on a personal errand."

*Id*. at 221.

In *McCann,* the court adopted the majority rule as set forth in *Larson's* and concluded

as follows:

As we stated in *Orman v. Williams Sonoma, Inc.*, "an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs while the employee is engaged in the duties of his employment." 803 S.W.2d 672, 676 (Tenn.1991) (citation omitted). Because an employee who travels on the business of the employer is considered to be

-16-

within the course of his or her employment continuously during the trip, <u>reasonable recreational activities properly undertaken by the employee during the trip are rationally connected to the work.</u>[3]  <u>Thus, injury or death occurring during a reasonable recreational activity arises out of and in the course of the employment.</u>

――――――

[3] *But cf. Tucker v. Acme Boot Co., Inc.*, 856 S.W.2d 703 (Tenn.1993); *Jordan* [*v. United Methodist Urban Ministries, Inc.*], 740 S.W.2d [411] at 412 [(1987)].  While *Tucker* and *Jordan* also involved recreational activities of employees, those cases pertain to *non*-traveling employees and are inapposite.  Our holding in the pending case is not intended to supplant or modify the principles applied to non-traveling employees under *Tucker*.

*Id*. at 222.

As can be seen, under the test used in Tennessee, injuries occurring when a traveling employee is engaged in recreational activities are compensable <u>if</u> the activities can be considered "reasonable."  Essentially the same test as applied in Tennessee was applied by the Illinois Court of Appeals in *Bagcraft Corp. v. Industrial Comm'n*, 705 N.E.2d 919 (Illinois Court of Appeals, 3rd Dist. 1999).  The *Bagcraft* case involved an employee who was sent by his employer (Bagcraft Corp.) to visit a paper mill and to stay overnight at a lodge owned by the mill (the Rhinelander Lodge).  *Id*. at 920.  After attending a meeting, Richard Bolda and another employee, decided to take a ride on an ATV (all-terrain vehicle).  As the ATV was being driven back to the lodge, Mr. Bolda fell off of it, struck a tree and died as a result.  *Id*. at 921.  In *Bagcraft*, the Court said:

> Given that the traveling employee doctrine applies to the instant case, the proper test for determining whether decedent's death arose out of and in the course of his employment is whether his conduct was reasonable and anticipated by Bagcraft.  As to the "reasonableness" prong, all the record

-17-

indicates is that, while returning to the lodge, decedent flew over his handle bars and struck a tree. There is nothing to suggest that decedent's conduct was unreasonable at the time of the accident; nor can we say that riding an ATV is unreasonable *per se*. As to the "anticipated" prong, the evidence shows that Bagcraft knew or should have known that ATV riding was among the recreational options at the Rhinelander lodge. Not only did Bagcraft employees ride the ATVs on previous trips, but Rhinelander distributed information packets on each trip describing the recreational activities available at the lodge. As such, we find that the Commission's conclusion that decedent's conduct was reasonable and anticipated by Bagcraft is not against the manifest weight of the evidence.

*Id*. at 923.

Other Illinois cases have reiterated the rule that recreational activities by a traveling employee are compensable as long as those activities are reasonable, and, from the employer's point of view, foreseeable. *See Jensen v. Industrial Commission*, 711 N.E.2d 1129, 1133. (Ill. 1ˢᵗ Dist. Court of Appeals 1999). Under that test, Illinois Courts look to "the manner in which a claimant engaged in a recreational activity." *Id*.

We turn next to consider *Jacobs v. Sara Lee Corp.*, 577 S.E.2d 696 (N.C. App. 2003), a case upon which appellees rely. In *Jacobs*, the claimant was a salesman for Sara Lee Corporation. *Id*. at 697. Sara Lee awarded the claimant a free trip to attend a food show in Chicago. *Id*. Claimant's employer paid for claimant's travel expenses and gave him the freedom to attend or not attend various functions at the food show. One such function was a party at "Dave & Busters." *Id*. at 697-98. While attending the food show, the claimant decided to attend a Chicago White Sox – New York Yankees baseball game. The baseball game was not on the itinerary of events related to the food show. *Id*. While leaving the ball

park, the claimant fell down and injured one of his knees. *Id*. The claimant brought a workers' compensation action and later testified that, because it was raining, he left the White Sox game early intending to go to the party at Dave & Buster's. *Id*. The Workers' Compensation Commission found that the claimant's injury was not compensable because: 1) the injury occurred when the claimant was on a "personal deviation;" and 2) the claimant's attendance at the party at Dave & Busters was not related or beneficial to Sara Lee. *Id*. at 698.

The *Jacobs* court affirmed the Commission, but addressed only the issue of whether the claimant, at the time of the injury, was on a "personal deviation." The Court said:

> Generally, '[a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be regarded as insubstantial.' 1 Larson § 19.00. at 4-352. However, an injury occurring after 'the personal deviation has been completed and the direct business route has been resumed' is compensable. *Id* at § 19.32.

*Id*. at 699 (quoting *Creel v. Town of Dover*, 486 S.E.2d 478, 483 (N.C. Ct. App. 1997)).

In *Jacobs*, the claimant admitted that "it was certainly reasonable for the Commission to find that the ball game was a personal departure" from the business trip, but, according to the claimant, the Commissioner erred when he found that the claimant "was still on his deviation to the ball game when he fell" because he was going to the event at Dave & Buster's. *Id*. at 698. The *Jacobs* Court simply held that there was competent evidence to support the finding that the claimant was still on a personal deviation when the accident occurred. *Id*.

Appellees cite *Jacobs* in support of their contention that the activity engaged in by appellant (dancing) like attending a baseball game, constituted a "distinct departure" by the appellant on "a personal errand" that "was not in the contemplation of the parties." At best, *Jacobs* provides only weak support for appellees' position. In *Jacobs*, the claimant did not even argue that going to a baseball game was not a personal deviation. Second, in the case *sub judice*, the claimant, like the airline attendant in *American Airlines v. LeFevers*, was injured while still on the premises of the hotel where he worked and was required to stay. Thus, arguably at least, the recreational activity engaged in by Gravette was more foreseeable.

Appellees also rely on *Nock v. M & G Convoy, Inc.*, 514 N.W.2d 200 (Mich. App. 1994). In that case, claimant was a long-distance truck driver from Pittsburgh, Pa., who was required to stay overnight in Detroit at a motel paid for by his employer. *Id*. at 201. The claimant, on the night of his injury, left the motel where he was staying in order to have dinner with a fellow truck driver. *Id*. He then went to a bar that was located next door to the restaurant and sat at the bar for a time and then he played pool but had little to drink. He had been in the bar for several hours when he saw some men assaulting two fellow truck drivers in the bar's parking lot. The claimant intervened in the fight, was hit in the head with a broken pool cue and, as a result, lost the use of one eye. *Id*. The Workers' Compensation Appeal Board found that the injury was not compensable because the claimant "deviated from any arguably work-related or work-required aspects of his over-the-road truck driving

duties such that any nexus between [claimant's] injury and his employment [] was broken."

*Id*. at 202. The Michigan Court of Appeals affirmed. *Id*. The Court based its ruling on its

interpretation of an amendment to M.C.L. [Michigan's Compiled Laws] § 418.301(3) which

read:

> An employee going to or from his or her work, while on the premises where the employee's work is to be performed, and within a reasonable time before and after his or her working hours, is presumed to be in the course of his or her employment. *Notwithstanding this presumption, an injury incurred in the pursuit of an activity the major purpose of which is social or recreational is not covered under this act.* Any cause of action brought for such an injury is not subject to section 131.

*Id*. at 201-02 (emphasis in original).

The holding in *Nock* was:

[W]e find that the amendment [M.C.L. § 418.301(3)] must be given its clear and plain meaning: Injuries are not compensable if the "major purpose" of the event during which they are incurred is social or recreational. Complaints about the wisdom or fairness of this amendment should be addressed to the Legislature.

*Id*. at 202.

*Nock* is inapposite. The major purpose test adopted by statute in Michigan, is

markedly different than the positional risk test set forth in *Mulready*, *supra*.

Lastly, appellees rely on *Williams v. Atlanta Family Restaurants, Inc.*, 419 S.E.2d 328

(Georgia Appeal 1992). The claimant in *Williams* was a traveling employee who was sent

by her employer to Commerce, Georgia, to assist in the training of waitresses for a new

restaurant owned by her employer. *Id*. The claimant was housed at an Econo Lodge motel,

along with other members of the training team. *Id*. After working several days, claimant, along with other employees, decided to go to a nearby Holiday Inn, where some of their supervisors were staying, in order to use the laundry facilities there. *Id*. While the laundry was being done, all the employees went to the Holiday Inn's lounge where a band was playing. *Id*. While in the lounge, claimant and her co-employees drank alcoholic beverages. *Id*. At approximately 11:00 p.m., the claimant's roommate informed her that the laundry was finished and that she was going back to the Econo Lodge. The claimant decided not to accompany her roommate because she had met some people, not associated with her employer, in the lounge. *Id*. at 328-29. Later in the evening, the claimant's supervisor offered to give her a ride back to the Econo Lodge. *Id*. at 329. The claimant refused that offer, stating that she preferred to remain with her "new friends who would drive her back to the motel." *Id*. At approximately midnight, the claimant left the Holiday Inn with a woman and three men, whom she had met in the lounge. *Id*. After dropping off "the only other woman in the group" and that woman's boyfriend, the claimant was taken by the remaining two men down a dirt road, raped and sodomized. *Id*.

The Administrative Law Judge ("ALJ") who considered the workers' compensation case, found that the claimant "stepped aside from her job" at the time she refused her supervisor's offer of a ride and had "embarked on a personal mission unrelated to her job" at the time she was assaulted. *Id*. The Court of Appeals of Georgia affirmed the decision of the ALJ. The court began its discussion by noting that Georgia Courts "have taken a

-22-

broad view in evaluating those activities . . . [alleged to be] incidental to employment, particularly in those cases which require employees to travel away from home." *Id*. at 329. The court then segued to a discussion of *McDonald v. State Highway Department*, 192 S.E.2d 919 (Ga. Ct. of Appeals 1972). The *McDonald* case involved a traveling employee who, after drinking alcohol and playing poker with fellow employees at a room in the Ramada Inn where he was staying, left the poker game and went to the hotel lounge where he talked to various patrons. *Id*. at 921. After he left the lounge, and while walking towards his own room, the employee fell down a flight of stairs and suffered fatal injuries. *Id*. at 921-22. In *McDonald*, the court said that when a traveling employee was engaged in "ministration to himself" that activity "should not – and we believe do not – take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner." *Id*. at 923.

After closely examining the *McDonald* case, the *Williams* Court said:

> Our examination must focus on the operative phrase: "in a normal and prudent manner." The *McDonald* case is particularly helpful to us because in that case and the case presently before us, the claimants had consumed alcoholic beverages. The court in that case was not troubled by the fact that the claimant had been drinking as it is not an illegal activity, and there was no showing that it was a causative factor in his fall. McDonald was walking back to his room at the time the accident occurred. He had not left the premises. That distinction alone is not dispositive and the court specifically noted that a traveling employee could not reasonably be expected to be confined to his own room. Nonetheless, Williams was a 22-year-old woman staying in a strange town. By her own admission, she had consumed five drinks. After refusing two rides back to her motel from her co-employees, she entrusted her safety to people who she had met only that evening. In these circumstances, we cannot find that the decisions made by Williams with regard to her own safety were

-23-

normal or prudent.

> "While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, *unless he steps aside from his employment for personal reasons*." (Emphasis supplied.) *Thornton v. Hartford Accident, etc., Co.*, 198 Ga. 786, 32 S.E.2d 816 (1945). In this case, when Williams declined the offered rides back to her motel and chose to remain "to finish her drink and dance" she stepped aside from her employment. We concur with the findings of the administrative law judge who noted that Williams left even the expanded scope of employment recognized by the courts of this state for traveling employees at that point and relieved her employer of any responsibility under workers' compensation for her own injury.

419 S.E.2d at 329-30. (Emphasis added).

The central reason that the claimant in *Williams* was denied compensation was that her personal safety decision to get in a car with two men, whom she had just met, was one that was made in disregard of her own safety and therefore her actions could not be characterized as "normal or prudent."

Nothing in the record in the subject case, would support the conclusion that Gravette's decision to dance at the Nightclub located at the hotel, where his room was paid for by his employer, was anything other than "normal or prudent." In other words, this case is distinguishable from *Williams* because, in the latter case, the employee was <u>not</u> denied compensation because she had decided to dance while off duty, she was denied compensation because of what she elected to do after she finished dancing. Moreover, based on the *McDonald* case, relied upon by the *Williams* court, it does not appear that under Georgia Workers' Compensation Law, that Gravette would have been denied recovery. We say this

-24-

because in *McDonald*, the court made the following observation:

> [U]nder the reasoning of the cases above cited, the employee is not even restricted to the confines of his lodging place if the activity is not proscribed. In our view, the fact that McDonald consumed alcoholic beverages during his interval of leisure is irrelevant in the case. . . . The mere consumption of alcoholic beverages was not illegal and there was no finding that it was a causative factor in McDonald's fall, that his acts of ministration to himself were not performed "in a normal and prudent manner," or that his fall was in any way caused by his own misconduct. When the employer paid for the employee's accommodations and living expenses at the Ramada Inn, it did not just rent a bedroom for the employee, but the entire facilities - the lounge, swimming pool, lobby, etc. - and had constructive knowledge that the employee would make use of the entire facilities on the premises. To restrict an employee with this status to the confines of his room or place of transacting business in his lodging place and hold that he is not covered except when either actually, directly conducting his employer's business or engaged in some activity which is strictly a necessity of life, would unduly limit the intended beneficial purpose of this remedial social insurance, which is to be liberally construed. *Wilson v. Md. Cas. Co.*, 71 Ga.App. 184, 188, 30 S.E.2d 420 [1944].

192 S.E.2d at 923-24. (Emphasis added).

In the case at hand, as in the *McDonald* case, it can be said that the employer had at least constructive notice that their traveling employees would make use of the entire facility at the Gaylord Hotel. Moreover, in our view, because appellant was required to stay at the hotel for over a week, his employer could not expect that he would remain in his hotel room when he was not working and refrain from engaging in recreational facilities. The Louisiana Court of Appeals in *Blakeway v. LeFebure Corp.*, 393 So.2d 928, (La.App. 4ᵗʰ Cir. 1981) made a similar point, viz:

> The employer had to contemplate that plaintiff and the other employees would participate in some recreation during their two-week stay for the

-25-

seminar. One could hardly expect these employees to retire to their rooms and remain practically immobile on each day when the classes ended and for the week end because [of] the two weeks of classes. The record shows that the motel's recreational facilities were readily available to the employees. From this we conclude that there was coverage had plaintiff met with the same accident while going for a swim just after his Friday afternoon class. Under these circumstances, the case would be similar to *Rosenquist v. New Amsterdam Casualty Company*, 78 So.2d 225 (La.App.Orl. 1955) where our predecessor court held that a sales lady and beauty operator employed to sell merchandise and to operate a beauty parlor aboard a vessel operating at sea did suffer a compensable accident when she fell down on the sun deck while in the process of sun bathing. Our hypothetical case of swimming accident occurring shortly after classes would be likewise similar to the facts in *Silver Engineering Works, Inc. v. Simmons*, 30 Colo.App. 396, 495 P.2d 246 (1972). There the court awarded compensation benefits to the Simmons who went swimming at a nearby beach just after a business conference around mid-day and drowned.

*Id*. at 930.

The trial judge in the subject case opined that when Gravette went dancing he was engaged in a "personal errand not in the contemplation of the parties." That Gravette would use the Nightclub is at least as foreseeable as other activities, engaged in by traveling employees that were deemed by courts in our sister states to have arose out of and in the course of employment. *See American Airlines v. LeFevers, supra*, (use of a swimming pool located on hotel premises); *Gray v. Eastern Airlines, Inc.*, *supra*, (use of a basketball court located at a YMCA close to the Holiday Inn where the claimant was staying); *Blakeway* v. *LeFebure*, *Corp.*, *supra* (use of a motel swimming pool); *McCann v. Hatchett, supra* (use of a motel swimming pool); *Bagcraft Corp. v. Industrial Commission, supra* (use of an ATV on premises where claimant was staying).

The circuit court judge also said that Gravette's dancing at the nightclub was "outside the spectrum of necessary activities that are incidental to travel." That "spectrum" is too narrow. "Necessity" is not the test; at least in any case we have found. *See e.g.*, *Chavez v. ABF Freight Systems, Inc.* (N.M. Court of Appeals, 27 P.3d 1011, 1016 (2001)) (rejecting necessity as the test and stating "[t]he test is one of reasonableness"). If it were the applicable test, it would be difficult to envision any case allowing a traveling employee to recover if engaged in recreational activities when injured. And, as demonstrated, numerous out-of-state cases have applied the "positional risk" test and have found recreational injuries compensable.

Our research has uncovered no case from a sister jurisdiction involving a traveling employee engaged in "reasonable" recreational activities at or near the premises where the traveling employee was staying, where the court held that the activity did not arise out of and in the course of employment. Here, the activity in which Gravette was engaging at the time of injury was certainly reasonable in that it was not dangerous or out of the ordinary. And, the injuries were foreseeable because the accident happened: 1) on premises (his hotel) where the employee could be expected to utilize and, 2) not far removed from his actual work site.

### C. *Conclusion*

We conclude that a traveling employee who is engaged in reasonable and foreseeable recreational activities when injured, is entitled to recover workers' compensation benefits for his injuries because such recreational activities are "reasonably incident to travel."

*Mulready*, 360 Md. at 366.  Because Gravette was engaged in reasonable and foreseeable recreational activities when injured, he was therefore entitled to recover.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE MARYLAND WORKERS' COMPENSATION COMMISSION SO THAT THE COMMISSION CAN DETERMINE THE AMOUNT OF COMPENSATION THAT SHOULD BE PAID TO APPELLANT; COSTS TO BE PAID BY APPELLEES.**